METHODIST CHURCH OF STURGIS, INC. *v.* TEMPLETON

No. 43712 December 17, 1965 181 So. 2d 129

*John Paul Moore,* Starkville, for appellant.

*Frank Watson,* State College; *Ben Hilbun, Jr.,* Stark-ville, for appellee.

BRADY, TOM P., J.

This is an appeal from a decree of the Chancery Court of Oktibbeha County, which denied the right to probate a letter dated November 21, 1955 as the last will and testament of Mrs. Viola T. Carter, on the basis that the writing was a conditional will based upon a

contingency which did not take place. Appellant contends that the alleged will is not based on any condition and therefore was and still is subject to being probated.

The essential facts in this case are as follows. Mrs. Merle McDonald filed a petition for the probate of the last will and testament of Mrs. Viola T. Carter on August 1, 1964. The petition recited that Mrs. Viola T. Carter died on January 12, 1964, leaving at that time a holographic will; that the estate of decedent was at that time being administered through said chancery court as though the decedent had died intestate and that the administration was being conducted by Mr. Otha Templeton, as administrator, by appointment of the court.

Petitioner alleged that the will was holographic, signed by the deceased, and that the handwriting and signature of the deceased was well known by residents of Sturgis, Mississippi, the home of the deceased. The petition prayed that letters of administration with will annexed be granted her. The will annexed was in the following pertinent language:

Nov. 21, 1955

This is to certify that in case of death to both of us at or about the same time we wish for our Estate to be divided as follows, to wit:

| | |
|---|---|
| Sturgis Cemetary (sic), two hundred fifty dollars | ($250.00) |
| Springhill Cemetary (sic) two hundred fifty dollars | ($250.00) |
| Mt. Olive Cemetary (sic) two hundred fifty dollars | ($250.00) |
| Sturgis Baptist Church Seven hundred fifty-dollars | ($750.00) |
| Spring Hill Baptist Church Seven hundred fifty Dollars | ($750.00) |
| Sturgis Methodist Church Ten Thousand dollars | ($10,000.00) |
| | $12,250.00 |

(Total Twelve Thousand two hundred fifty dollars After these specifications were noted in the writing, there occurs the following:

One half (1/2) of the remainder of the Estate to go to the H. L. Carter heirs as follows;

One half (1/2) to Mrs. Merle McDonald (Sister)

One half (1/2) to H. R. Carters childred (sic)

 (Humlett Carter
 (Howard Carter
 (Sarah Nougher

and one half (1/2) of remainder of Estate to go to The Templeton heirs, as follows Harvey Templeton, Chelcey Templeton, John Templeton, Otha Templeton, Nathan Templeton's children (A. D. Templeton

 (Ruby Anderson

Forest Templeton's children

 (I. O. Templeton
 (Foresteen Goodwin

/s/ H.L. Carter L.W. Brown Atorney (sic)

/s/ Mrs. Viola T. Carter Small fee

Sturgis, Miss. Donate to
 Methodist church

Otha D. Templeton, brother of the deceased, Viola Templeton Carter, filed a caveat against the probate of the alleged will, the gravamen of which is that the will fails and is void because of the failure of the contingencies stipulated in the will to ever take place. Other grounds were also alleged as objection to the probating of the alleged will.

The record discloses that on June 28, 1964, when Mrs. Merle C. McDonald, Administratrix With Will Annexed, was searching the home of her deceased sister-in-law in Sturgis, Mississippi, she found the instrument in question in a pocket of a hose and shoe rack, which was hanging on the door of a closet in the den of the deceased's home.

On November 4, 1964, the cause was heard, and on December 14, 1964, the chancellor rendered his opinion and decree. The chancellor found that on November 21, 1955, H. L. Carter and his wife, Mrs. Viola T. Carter, signed an instrument designated as their last will and testament.

The court held that the instrument was written "in the handwriting of Mrs. Viola T. Carter with the exception of the signature of her husband," and that the signature of H. L. Carter would not prevent the probate of this will as a holographic will of Mrs. Viola T. Carter.

With reference to the basic objection, the chancellor pointed out in his opinion that the will recited as follows:

This is to certify that in case of death to both of us *at or about the same time* we wish for our Estate to be divided as follows, to wit: (Emphasis ours.)

The court observed further that the instrument then made special bequests in the amount of $12,250 to certain churches and cemeteries named therein, and provided that the remainder of the estate be divided one-half to the H. L. Carter heirs and one-half to the Templeton heirs, naming the Carter and Templeton heirs referred to.

The court adjudicated that the instrument was not the valid will of H. L. Carter because his signature was not witnessed and it was not written by him, and therefore it was inoperative as his will. Mr. Carter died in June 1963 and his wife followed him in death on January 12, 1964, six months and nineteen days later. The chancellor pointed out as follows:

The Contestants contend that the phrase "at or about the same time" created a contingency that did not occur since more than seven months separated the date of death of the parties to the instrument.

The chancellor concluded, in his opinion, as follows:

It is the opinion of the Court that taking the phrase "at or about the same time" and construing it in the light of the context and attending circumstances, the will was conditional, the condition being that Mr. and Mrs. Carter were trying to make a disposition of their estate provided they met death within a short time of each other. It is the opinion of the Court that if either survived for more than a very short period of time, it was not the intention of Mr. and Mrs. Carter that this instrument would operate as a will. Mr. Templeton testified that Mrs. Carter made the statement when she went to the hospital during her last illness, that she did not have a will. *His testimony was not objected to* under Section 1690 of the Mississippi Code of 1942, and neither was an objection made under this section to the testimony of the lady who found the will. (Emphasis ours.)

The chancellor held that the instrument was not a will under the rulings of this Court, and did not permit the will to be admitted to probate as the last will and testament of Mrs. Viola T. Carter.

Appellant assigns three errors, which are as follows:

I.

That the decision of the court in failing to allow the probate of the last will and testament of Mrs. Viola T. Carter is error since the will was not based on a condition.

II.

That the court erred in holding that the letter dated November 21, 1955, was a valid and holographic will of Mrs. Viola T. Carter and at the same time, holding the will would have to be republished to be a valid and binding (sic) will since no condition was present.

## III.

The court erred in failing to sustain an objection to the testimony of Otha D. Templeton at Page 62 of the Transcript since this was an attempt to alter, vary or modify (Revoke) by parol evidence the terms of a valid holographic will.

It is obvious that the disposition of either of the first two errors will dispose of both, since the basis of each of these errors is that the court erred in not permitting the probate of the instrument because it was *not based on a condition*. The third error, which is without merit, does not require any attention, for the reasons stated by the chancellor.

We turn now to the principal question presented in the first two errors assigned, namely, that the court erred in denying the probate of the alleged holographic will since the will was not based on a condition. We must look directly to the words in question, which are: ''This is to certify that in case of death to both of us at or about the same time . . . .''

The question before us is what Mrs. Carter actually meant when she wrote the words, ''In case of death to both of us at or about the same time.'' Did the signers of the instrument mean, or did they intend, that it should apply only in cases of simultaneous or near simultaneous death? Mr. Otha D. Templeton, testifying as to what Mr. H. L. Carter had told him, said:

He told us that he had wrote this letter, and he said, ''If we get killed or die on the trip, it will give y'all a starting point.''

Rephrasing the question, did these words constitute a condition precedent before the application of the purported will would take effect?

In Magee v. McNiel, 41 Miss. 17, 18, 90 Am. Dec. 354, 355 (1866), we have a case which sheds considerable light on the issue at hand. In that case a confederate

soldier's holographic will provided, "if I never get back to you I want all I have to be yours." He returned to her. This Court held in that case that the will was void; that it was dependent on the contingency of the soldier's not returning, which contingency did not occur.

In Davis v. Davis, 107 Miss. 245, 246, 65 So. 241, 242 (1914), the writer of the holographic will provided: "Should I not get over this operation, I want you and Papa to take charge of everything I've got . . . ." We held in that case that the writer of the will did not intend to make an unconditional bequest, but one which was to take effect only in the event he should not recover from the operation. That case cited, among others, Parsons v. Lanoe, 1 Ves. Sen. 189, 27 Eng. Rep. 974 (Ch. 1748), wherein a purported will was written conditioned upon the death of the writer thereof before his return from a journey to Ireland, which condition did not occur.

In Du Sauzay v. Du Sauzay, 105 Miss. 839, 63 So. 273 (1913), the introductory clause of the alleged will of Mrs. De Montluzin disclosed that she was making a record of her wishes should her husband survive her, which he did not do. We held that a contingent holographic letter was not admissible to probate.

In Meszaros v. Holsberry, 84 So. 2d 565, 566 (Fla. 1956), the written instrument provided, "mindful of the uncertainties of life and the certainty of death, and in anticipation of death by a common disaster, do hereby make, publish and declare . . . ." This was executed by husband and wife who both died of natural causes sixteen days apart. The Florida court held that the will was not operative and not entitled to probate as it was dependent on a condition which never occurred.

In American Trust & Safe Deposit Co. v. Eckhardt, 331 Ill. 261, 262-63, 162 N. E. 843, 844 (1928), which case is similar to the case at bar, it was provided: "In the event that our deaths should occur simultaneously, or approximately so, or in the same common accident or

calamity, or under any circumstances causing doubt as to which of us survived the other, then we hereby . . . ." The Illinois court held that it was a contingent or conditional will and inoperative if the event did not occur.

In Wilson v. Higgason, 207 Ark. 32, 33, 178 S.W. 2d 855, 856 (1944), the will specified a condition under which it was to be operative, namely, if the writer should die "any time soon." In that case he did not so die, and the Arkansas court held that the will specified a condition under which the will was to be operative, and since the condition did not occur, the letter was not operative as a will.

 █ It is pointed out in 94 Corpus Juris Secundum *Wills* section 152 (1956), as follows:

> A will may be drawn to take effect only on the happening of a specified contingency, which is a condition precedent to the operation of the will, and when so drawn a will is denominated a contingent, or conditional, will. Such a will is operative if the contingency happens or occurs, but its operation is defeated by failure or nonoccurrence of such contingency, except where it is subsequently revived or republished by the testator. (94 C.J.S. at 938-39.)

The case of Redhead v. Redhead, 83 Miss. 141, 35 So. 761 (1903), cited by the appellant, is distinguishable and is not applicable, for the reason that in that case the testator intended for the will to take effect *without a condition,* because he expressly used the words: "Realizing the uncertainty of life at all times and the dangers incident to travel, I leave . . . ." The validity of the writing was not contingent upon his death abroad. It appointed administrators and made elaborate disposition of his estate.

The case of Prather v. Prather, 97 Miss. 311, 52 So. 449 (1910), cited by appellant, likewise is not applicable for the reason that in that case the letter written did not contain any condition at all, the question there

being whether or not the writer intended the letter to be a will.

Appellant cites Buffington v. Thomas, 84 Miss. 157, 158, 163, 36 So. 1039, 1040 (1904), as being in point. In that case a letter was written by a married woman and contained this language: "I was taken with fever, from which I may never recover. . . . (I)n case that I die see that . . . ." Appellant contends that this Court found she recovered from her illness and returned home. Actually, this Court found as follows: "The acute attack of fever was the inducement to the woman to indicate her last wishes, and her dominant idea was to express them, and to say what she wanted 'in case I die,' and she gives her reason for the wish."

We have experienced difficulty in following the rationale in the briefs of counsel, and in reconciling the briefs with the authorities cited. Prudence suggests that attorneys, in paraphrasing or summarizing the evidence or rulings in a case which is cited, should be astute and careful to accurately do so.

No comfort can be afforded the appellant by his contention that, since the deceased retained the will, this is proof that it was revised by the mere retention of it and that it was her avowed will. This is contrary to the testimony in the case, because Mrs. Carter's brother testified that during her last illness she had stated to him that she did not have a will, as reflected by the following:

Q. Will you state what she said to you and what you said to her in your conversations regarding a will?

A. Well, she told me that she didn't have a will, which I already knew. She had told me that before she ever went to the hospital . . . .

It is possible that the deceased's husband, or someone else, could have put the will in the shoe rack, but from this testimony it appears that it was not the deceased who had preserved the purported will. Further-

more, the record discloses that Mrs. Carter stated that the letter had been torn up, which indicates that she had not preserved or retained it and could not possibly have sought to revive or republish it without the contingency following her husband's death, or before it.

We are not concerned with the fact that Mrs. Merle McDonald is not a claimant in this case, nor with the fact that the Baptist Church, through its board of deacons, has renounced any claim or interest in the proceeds of this estate, a recessive characteristic rarely found in religious sects. The fact that there will be something left if and after the Methodist Church of Sturgis, Inc. has been declared to be the rightful owner of the $10,000 is of no consequence either.

■■ ■ This Court holds that the words, "in case of death to both of us at or about the same time," mean exactly what they say. They contemplate that both Mr. and Mrs. Carter must have necessarily died or been killed at about the same time. We cannot say that six months and nineteen days is at or about the same time, "at" meaning simultaneously or on the same date, and "about" meaning in close proximity thereto, in this instance meaning near in time to the same date that one or the other died.

We have studied the well reasoned opinion and decree of the learned chancellor and we are in accord with its findings and conclusions. Conceding the writing to be a will, it was a conditional will and the deaths of the two subscribers thereto did not occur at or about the same time. It was obviously the intention of the subscribers that if either survived the other for more than a very short period of time the instrument was not to operate as a will.

For these reasons, the decision of the lower court is hereby affirmed.

Affirmed.

*Ethridge, P. J., and Gillespie, Rodgers and Smith, JJ.,* concur.