This is the second time this case is on appeal to this Court from the Chancery Court of Lauderdale County, Robert H. Oswald presiding. The first time we heard this case we found that Allan Hobgood's will which set up a racially discriminatory charitable trust was illegal. Because that will had no residuary clause in the event the trust should fail, we reconstructed it by adding an ultimate residuary clause which would allow the Tinnins to take as heirs at law. We then found the reconstructed will ambiguous and reversed and remanded for a new trial to determine the least offensive alternatives to the general plan of Hobgood's reconstructed will: (1) to continue the trust without the racially restrictive clause, or (2) to cause the trust to fail and distribute the property to the heirs at law. Tinnin v. FirstUnited Bank of Mississippi, 502 So.2d 659 (Miss. 1987).
Following the mandate of Tinnin I, at the conclusion of the second trial the chancellor concluded that the Tinnins were not close to Hobgood, were not objects of his affection, and that Hobgood's interest in helping young people attend college was of great importance to him. Since Hobgood's clearly expressed racially discriminatory intent, when weighed against the extrinsic evidence, was found by the chancellor to be of much less importance to Hobgood than his interest in helping young people go to college, the chancellor concluded that Hobgood would have preferred that the trust survive without the discriminatory language. Therefore, the trust was modified by deleting the racial restriction contained therein to enable the trustee to continue to carry out the testator's principal purpose of assisting worthy students, white or black, who are in need of educational loans.
Unhappy with the results of the second trial, the Tinnins appeal to this Court with three assignments of error:
1. The judgment was against the overwhelming weight of the evidence;
2. The chancellor erred in applying the guidelines and rules established in Tinnin v. First United Bank of Mississippi,502 So.2d 659 (Miss. 1987); and,
3. The Supreme Court's first decision in Tinnin v. FirstUnited Bank of Mississippi should be overturned.
 I.
WAS THE JUDGMENT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
We again apply the well known principle that this Court will not disturb a chancellor's findings of fact unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Bell v. Parker, 563 So.2d 594, 596-97 (Miss. 1990). When a chancellor's findings are supported by substantial, credible evidence in the record we will not reverse. Branton v.Branton, 559 So.2d 1038, 1042 (Miss. 1990). *Page 1195 
The Tinnins contend that the chancellor improperly disregarded their testimony. It is true that the testimony of a witness which is not contradictory, and not incredible, improbable, unreasonable or untrustworthy, must be given weight by the trier of fact, and could not be arbitrarily and capriciously rejected.Morris v. Lansdell's Frame Co., 547 So.2d 782, 785 (Miss. 1989); Collins v. General Elec. Co., 239 Miss. 825,123 So.2d 609, 614 (1960). However, credibility of witnesses is a determination to be made by the chancellor. Bell v. Parker,563 So.2d 594, 597 (Miss. 1990).
The record in this case reflects that the testimony of the Tinnins was contradicted. The chancellor noted the contradiction and his findings are supported by substantial credible evidence in the record. We therefore do not find that the chancellor's judgment was against the overwhelming weight of the evidence, and the chancellor committed no manifest error.
The chancellor also did not err in allowing extrinsic evidence of declarations made by Hobgood expressing his intent regarding the trust to be admitted into evidence. The cases cited by the Tinnins, Stovall v. Stovall, 360 So.2d 679, 681 (Miss. 1978);In re Estate of Martin, 199 So.2d 829 (Miss. 1967); and Mageev. McNeil, 41 Miss. 17, 25 (1866), are distinguishable because each applies to the admission of extrinsic or parol evidence when there was no latent ambiguity in the will. Here there was.Tinnin I at 669. We find no merit to this assignment of error.
 II. WAS IT ERROR TO APPLY THE GUIDELINES AND RULES ESTABLISHED IN TINNIN I?
In Tinnin I we set aside the chancellor's conclusion that the racial restriction in Hobgood's will was only incidental, not integral. Tinnin I at 668. The Tinnins argue that the chancellor again applied this "integral/incidental analysis" inTinnin II. We find from the record that the Tinnins are in error in this suggestion. In Tinnin I this Court found that there existed a general plan to Hobgood's reconstructed will and the question to be determined on retrial was which alternative would be less offensive to Hobgood's general plan.
The language used by the chancellor shows that he did not rely on the "integral/incidental analysis" in deciding the case. He balanced the competing evidence and determined that there were dominant purposes in Hobgood's general plan. See Matter ofEstate of Anderson, 541 So.2d 423, 430, n. 13 (Miss. 1989). From these purposes the chancellor adopted the construction which in his opinion resulted in a just and reasonable result as required by this Court in Tinnin I at 669. This argument has no merit.
The Tinnins next complain that the chancellor required them under the object of affection guidelines of Tinnin I to prove that Lucille Tinnin would be the person most preferred by Allan Hobgood to receive the assets of the failed trust. The Tinnins are not required to prove that they were the special objects of Hobgood's affections, and clearly they were not since he excluded them from his will. In Tinnin I we requested the chancellor, on retrial, to determine whether the Tinnins were objects of Hobgood's affection. If found to be objects of Hobgood's affection, then the law would favor the Tinnins just as the law favors beneficiaries who appear to be the special objects of the testator's bounty when an instrument is ambiguous and capable of two constructions. New Orleans Baptist Theological Seminary v.Lacy, 219 So.2d 665, 672 (Miss. 1969).
The burden is properly on the Tinnins to show that they or their mother were objects of Allan Hobgood's affections. Nothing in this record indicates that the chancellor held them to any higher standard than that. The chancellor was not in error in his application of Tinnin I.
It appears that the Tinnins believed that if there was any proof of affection at all between Hobgood and the Tinnins, the chancellor was required to terminate the trust. This construction cannot be arrived at from a reading of Tinnin I and in this contention the Tinnins are incorrect. *Page 1196 
The Tinnins next argue that the chancellor required them to establish racial hatred on the part of the Hobgoods. Tinnin I
only required that the chancellor should ascertain, if possible, the power and source of Allan Hobgood's interest in helping young people go to college and how important this was vis-a-vis his clearly expressed racially discriminatory intent. Tinnin I at 670. The Bank correctly points out that the Tinnins introduced testimony emphasizing Hobgood's attitude towards blacks. Therefore, it was appropriate for the chancellor to respond to the extrinsic evidence introduced at trial.
In sum, the trial court balanced the evidence to determine which alternative was less offensive to the general plan of Hobgood's will. This was the standard set forth for the chancellor in Tinnin I and the chancellor did not commit legal error.
 III.
SHOULD THIS COURT OVERTURN TINNIN V. FIRST UNITED BANK OF MISSISSIPPI, 502 So.2d 659 (MISS. 1987)?
All of the arguments made under this assignment of error were the arguments advanced by the Tinnins and answered by this Court in Tinnin I. We decline to answer them in Tinnin II any differently than we did in Tinnin I. This assignment of error is without merit.
In conclusion, we find that there is no merit to the assignments of error and the judgment of the lower court should be affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.